IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

HARRIET M. TAYLOR,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CRIMINAL NO.: WDQ-12-0452

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Harriet Taylor pled guilty to wire fraud. ECF No. 4. On January 18, 2013, she was sentenced to 24 months imprisonment and a five-year term of supervised release. ECF No. 17. She was also ordered to pay restitution in the amount of $1,510,386.54. *Id.* Pending are Taylor's *pro se* motions: (1) to amend her restitution order, ECF No. 21; and (2) to reduce her sentence, ECF No. 23. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motions will be denied.

I. Background

In 2002, Taylor was the managing member and co-owner of Regal Title Company, LLC ("Regal") and Loyalty Title Company, LLC ("Loyalty"), which were licensed title insurance producers and agents. ECF No. 1 at 1. Regal and Loyalty contracted with Old Republic National Title Insurance Company ("Old Republic"),

a title insurance underwriter, to issue Old Republic title insurance commitments for real property located in Maryland, Delaware, the District of Columbia, and Virginia. *Id.* at 2. Under their agreements, Regal and Loyalty were obligated to establish escrow accounts to hold and disburse funds from lenders for real estate closings involving Old Republic title commitments. *Id.* Regal and Loyalty were also obligated to hold in trust title insurance premiums collected for Old Republic. *Id.*

Beginning in about April 2009, Taylor directed lenders to wire closing funds to Regal's operating account rather than its escrow account. *Id.* at 3. She also transferred funds between Regal's and Loyalty's escrow accounts and their operating accounts. *Id.* Taylor used the improperly commingled and misappropriated funds to keep the businesses afloat and to enrich herself. *Id.* In several cases, Regal and Loyalty also failed to pay off prior liens at closings, so Taylor's companies made payments on the mortgages to conceal the companies' failure to pay off prior liens. *Id.* at 4-5. In total, Taylor failed to remit almost $1.5 million to satisfy these liens. *Id.* at 4.

On August 21, 2012, Taylor was indicted on one count of wire fraud, in violation of 18 U.S.C. § 1343. ECF No. 1. On

September 12, 2012, pursuant to a plea agreement,[1] Taylor pled guilty. ECF No. 4.

On October 22, 2012, the United States Probation office completed a pre-sentence report ("PSR"). The report determined that Taylor's offense level was 25, she was eligible for a downward adjustment of three levels to 22 for acceptance of responsibility, and her criminal history category was I. PSR at 6-7 (sealed). The PSR calculated an advisory Sentencing Guidelines range of 41 to 51 months imprisonment. PSR.

On January 18, 2013, Taylor was sentenced to 24 months imprisonment and five years of supervised release. ECF No. 17 at 1-2. She was also ordered to pay $1,510,386.54 in restitution. *Id.* at 5. The judgment stated that "[u]nless the court orders otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties except those payments made through the Bureau of Prisons ["BOP"] Inmate Financial Responsibility Program ["IFRP"], are to be made to the Clerk of the Court." *Id.* at 6. The judgment also ordered that, if Taylor did not pay the entire penalty before supervised release commenced, "the balance shall

---

[1] Under the plea agreement, the parties stipulated sentencing guidelines factors that would result in a total offense level of 22. ECF No. 6 at 4. The government agreed to recommend a sentence at the lower end of the guidelines range for this offense level. *See id.* at 5.

be paid . . . on a nominal payment schedule of $100.00 per month during the term of supervision." *Id.* Taylor did not appeal her conviction or sentence.

On July 18, 2013, Taylor moved to amend the restitution order so that she would no longer have to participate in the IFRP to make restitution payments. *See* ECF No. 21. On September 3, 2013, the government opposed the motion. ECF No. 22. On December 11, 2013, Taylor moved to reduce her sentence. ECF No. 23. On March 26, 2014, the government opposed the motion. ECF Nos. 25-26.

II. Analysis

A. Motion to Amend Restitution Order

Taylor requests amendment of her restitution order because "the Court failed to set a payment schedule as required under 18 U.S.C. § 3664(f)(2). As a result[,] the Defendant[] has been required to pay under the [IFRP], instead of paying restitution after release from prison." ECF No. 21 at 1. She notes that "[c]ase after case reverse the District Court's restitution Order[s] because the Court had delegated responsibility of determining a payment schedule to the [BOP]." *Id.* at 2. The government argues that the Court did set a payment schedule in the judgment, and that Taylor's participation in the IFRP is voluntary. *See* ECF No. 22 at 6.

In *United States v. Miller*, 77 F.3d 71, 73 (4th Cir. 1996), the defendant pled guilty to possessing and passing counterfeit federal reserve notes. At sentencing, the district court ordered Miller to "make payments toward [a] $3,000 fine and [a] fifty-dollar restitution at such times and in such amounts as the Bureau of Prisons and/or the Probation Office may direct." *Id.* at 74. The Fourth Circuit vacated Miller's sentence and remanded for resentencing, holding that the "district court may not delegate its authority to set the amount and timing of fine payments[2] to the Bureau of Prisons . . . without retaining ultimate authority over such decisions." *Id.* at 78.

The terms of Taylor's judgment do not specify a due date for payment of the criminal penalties, thus payment is due immediately. *See, e.g.*, *Dominquez v. Bureau of Prisons*, 5:06-CT-3088-FL, 2007 WL 4224329, at *3 (E.D.N.C. May 15, 2007) (*citing* 18 U.S.C. § 3572(d) ("A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately . . . unless the court establishes another schedule.")). "The immediate payment directive is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately." *Matheny v. Morrison,* 307 F.3d 709, 712 (8th Cir. 2002) (internal

---

[2] The *Miller* Court noted that this reasoning applied equally to "restitutionary installment payments," citing *United States v. Johnson,* 48 F.3d 806, 808-09 (4th Cir. 1995). 77 F.3d at 77-78.

quotation marks omitted) (*quoted in Coleman v. Brooks*, 133 F.
App'x 51, 53 (4th Cir. 2005)). The Fourth Circuit has held that
participation in the IFRP to collect restitution payments due
immediately does not violate the non-delegation principle of
*Miller. See Coleman*, 133 F. App'x at 53; *United States v.
Caudle*, 261 F. App'x 501, 503-04 (4th Cir. 2008). Accordingly,
the Court did not improperly delegate the creation of a payment
schedule to the BOP,[3] and Taylor's motion to amend the
restitution order will be denied.

    B. Motion to Reduce Sentence

    Taylor requests a reduction of her sentence for her "post-
sentencing rehabilitation programming," citing *Pepper v. United
States*, 131 S. Ct. 1229, 1236, 179 L. Ed. 2d 196 (2011). ECF
No. 23 at 1. The government argues that *Pepper* is inapplicable
and that none of the requirements are met for modification of
her sentence under 18 U.S.C. § 3582(c). ECF No. 25 at 1-2.

_____

[3] Taylor cites *Ward v. Chavez*, 678 F.3d 1042, 1049-50 (9th Cir.
2012), which holds that the district court may not order
immediate payment of a penalty, without consideration of the
defendant's ability to pay, with the expectation that the BOP
will "work out the details of payment" if the defendant cannot
actually pay immediately. However, the Ninth Circuit in *Ward*
notes that, "in contrast, the Fourth, Fifth, and Seventh
Circuits have held that a judgment of conviction need not
contain a schedule of restitution payments to be made during the
period of incarceration." 678 F.3d at 1047 n.2 (*quoting United
States v. Lemoine*, 546 F.3d 1042, 1048 n.4 (9th Cir. 2008)
(internal quotation marks omitted)). Accordingly, *Ward* is not
persuasive authority.

In *Pepper*, the district court sentenced the defendant to a 24-month prison term. 131 S. Ct. at 1236. On appeal, the Court of Appeals vacated the sentence and remanded for resentencing. *Id.* In the meantime, the defendant had been released from prison. *Id.* On remand, the district court considered, *inter alia*, the defendant's post-sentencing rehabilitation and imposed the same sentence. *Id.* at 1236-37. On appeal, the Supreme Court affirmed the actions of the district court, holding that "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing [to] support a downward variance from the advisory Guidelines range" when appropriate. *See id.* at 1241.

Here, unlike in *Pepper*, Taylor did not appeal her sentence, and it remains a valid judgment. *Pepper* does not authorize the district court to modify an *existing* sentence on the basis of post-sentencing rehabilitation efforts. *See United States v. Morris*, 7:02-CR-00128-GRA-1, 2013 WL 1303124, at *1 (D.S.C. Mar. 28, 2013) ("[R]ehabilitation may be considered by a court while a defendant is being sentenced or resentenced, but it may not be used as an independent ground for a defendant to obtain a resentencing.").

Under 18 U.S.C. § 3582(c), a Court may modify a sentence after it has been imposed only: 1) upon motion of the Director

7

of the Bureau of Prisons if "extraordinary and compelling reasons" exist; 2) if otherwise expressly permitted by statute or Federal Rule of Criminal Procedure 35; or 3) if the sentencing range is subsequently lowered by the Sentencing Commission. Post-sentencing rehabilitation is not a ground for reducing a sentence under § 3582(c). *See, e.g.*, *Morris*, 2013 WL 1303124, at *1. Accordingly, although the Court commends Taylor's efforts at rehabilitation, the motion to reduce sentence must be denied.

III. Conclusion

For the reasons stated above, Taylor's motions will be denied.

$\frac{4/28/14}{\text{Date}}$

William D. Quarles, Jr.
United States District Judge

8